GULLY, STATE TAX COLLECTOR, *v.* PILOT LIFE INS. CO.

(Division B. Feb. 10, 1936.)

[165 So. 610. No. 32066.]

**Lotterhos & Travis**, of Jackson, for appellant.

Smith, Wharton & Hudgins, of Greensboro, N. C., and Wells, Wells & Lipscomb, of Jackson, for appellee.

Argued orally by **Fred Lotterhos**, for appellant, and **W. R. Newman, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The state tax collector, appellant, filed a bill against the Pilot Life Insurance Company, appellee, seeking to collect the premium tax levied by chapter 89, sections 111 (a) and 111 (b), Laws of 1932. He alleged that the appellee, prior to November 1, 1932, was engaged in the life insurance business in Mississippi, having offices and agents to solicit business, collect premiums, and adjust claims, and was duly qualified to do business in this state, having complied with the laws of Mississippi, and hav-

ing made the necessary reports of its business and its premium collections, and having paid such taxes as were required of it under the laws of Mississippi; that on or about November 1, 1932, the appellee attempted to withdraw from the state of Mississippi, and since that date has failed to make such reports as are required of it, and failed to pay the taxes due by it to the state of Mississippi.

He further alleged that the appellee qualified for business in this state as of March 1, 1932, under the insurance laws of the state, paying the flat privilege tax imposed upon life insurance companies for the year beginning March 1, 1932, and premium taxes for business done in the state during the first ten months of 1932, but has failed and refused to pay premium taxes since the 31st of October, 1932; that during the period of time the appellee was duly qualified to do business in Mississippi it wrote and issued numerous and sundry contracts of insurance, which contracts were continuous, with annual payment of premiums, and that said policies did not lapse so long as premiums were paid thereon; that appellee had written numerous policies which were in force at the time this suit was filed, and upon which policies premiums were collected at stated periods, usually annually, semiannually, or quarterly.

The appellee gave notice to the insurance commissioner of its intention to withdraw from this state, which notice was accepted by the commissioner as a notice of withdrawal.

It appears that about July 17, 1934, the appellant made a specific demand upon appellee for the payment of said premium tax and the making of said reports, but the appellee refused so to do.

It also appears that appellee, after its withdrawal from this state, continued to collect premiums on policies in force in this state which had been written during the

period appellee was engaged in business in Mississippi, upon which it paid no tax, contending that it was not subject to the payment of the premium tax after its withdrawal, because it was not doing business in the state, and the tax collector had no right to attempt to collect such premium tax.

The chancellor held there was no right, on the part of the state, to collect the premium tax after the appellee had withdrawn from the state, as it was not doing business in the state, within the meaning of the statute.

The questions presented involve the construction of sections 111, 111(a), and 111(b) of chapter 89, Laws of 1932. That statute imposes upon the insurance companies named therein certain privilege taxes. By section 111(a) a tax of two hundred dollars is levied upon each life insurance company or association, and a tax of two hundred dollars upon the various other companies named therein. By section 111(b) it is provided as follows:

"In addition to the license tax above stipulated in section 111(a) which tax shall be paid when the company enters or is admitted to do business in this state, the following additional license and privilege taxes shall be paid by all foreign insurance companies, as follows: All life insurance companies or associations shall pay annually a tax of two and one-fourth (2-¼) per centum of the gross amount of premium receipts in this state, less premiums paid to re-insuring companies authorized to do business in this state, and where such re-insurance company pays the tax on such premiums, and less matured endowments and cash dividends paid under policy contracts, in this state during the year, and less premiums returned to policy holders and cancellations, on account of policies not taken; provided, however, that the tax assessed on any such life insurance company shall not be less than an amount equal to two (2) per centum of the gross premiums received by it upon the

business done within the state during the said year. Before any insurance company shall be permitted to deduct the premiums paid to re-insuring companies, as above provided, it shall certify in its annual report to the Commissioner of insurance the names of such re-insuring companies and the gross amount of premiums on the proportion of insurance reinsured in each such company. All health, accident, and/or industrial insurance companies, including life insurance companies, which include in the policy or insurance contract health and accident provisions, shall pay annually a tax equal to two and one-fourth per centum of the gross premiums received from contracts or insurance policies written in this state less premiums paid to re-insuring companies authorized to do business in this state, and where such re-insurance companies pay the tax on such premiums, and less premiums returned to policy holders and cancellations on account of policies not taken; provided, however, that the tax assessed on any such insurance company shall not be less than an amount equal to two (2) per centum of the gross premiums received by it upon the business done within this state during the said year; provided, further, that where any such company writes life insurance policies separate from health, accident and/or industrial insurance policies, it shall be permitted to report separately the premium receipts, from the two said classes of insurance and shall pay on its life insurance premiums as next above provided, and on its health, accident, and/or industrial insurance premiums as provided in this paragraph. Any insurance policy carrying a double indemnity, or disability clause, shall be termed a life insurance policy.''

It will be seen that, in addition to the two hundred dollars privilege tax imposed, there is also imposed a tax of two and one-fourth per centum on the gross amount of premiums collected on business done within the state

during said year for which the tax was paid. When the insurance company took out a license to do business in the state, it took it out for one year, and incurred an obligation, under the statute, to pay the premium tax upon such premiums as were paid during the year.

We think it was the manifest intention of the Legislature to impose a tax on both the straight privilege and a premium tax for the yearly period, and the fact that the appellee withdrew from the state before the period expired did not relieve it of its obligation to pay the premium tax on premiums collected on business written in the state during the yearly period beginning on March 1, 1932, and ending on February 28, 1933.

The state tax collector contends that the appellee is also liable for taxes on premiums collected on policies after the expiration of the period for which it was licensed to do business, and so long as it continues to collect premiums upon policies secured during said period.

We think, however, that it was the purpose of the Legislature to tax only during the period the insurance company was licensed to do business in this state, and that, when it withdrew from the state and ceased to do business here, it became exempt from paying premium taxes after the tax year expired. As we construe the statute, the Legislature did not intend to tax beyond the period for which the privilege license was granted.

Whether it would be permissible for the state to enact a statute along the line of the contention of the state tax collector is not now necessary to be decided, because, as stated, we do not interpret the statute enacted to extend beyond the year for which the privilege tax was levied.

It follows from what we have said that the court below was in error, and therefore the judgment will be reversed and the cause remanded for the ascertainment of the

amount of the premium taxes due the state for the period of one year from March 1, 1932.

Reversed in part, and remanded.